IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION


JAMIE PIERATT,                      )
                                     )
           Petitioner,          )
                                     )
v.                               )  No.  3:17-CV-436-TWP
                                     )       3:14-CR-138-TWP-HBG-17
UNITED STATES OF AMERICA,     )
                                     )
           Respondent.       )


## MEMORANDUM OPINION

Before the Court is Jamie Pieratt's ("Petitioner's") counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 641].[1] The United States responded in opposition. [Doc. 9; Crim. Doc. 650]. For the reasons below, Petitioner's § 2255 motion [doc. 1; crim. doc. 641] will be **DENIED**.

## I.      BACKGROUND

In 2015, Petitioner was charged, in a multi-defendant, multi-count indictment, with conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1), conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (h) (Count 2), and possession of a firearm in

---

[1] Document numbers not otherwise specified refer to the civil docket.

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 6). [Crim. Doc. 65].

Petitioner entered into a written plea agreement, in which he agreed to plead guilty to Counts 1 and 2 of the indictment. [Crim. Doc. 284 at 1-2]. As part of the plea agreement, Petitioner agreed to the following factual basis for his plea. [*Id*. at 3]. From the Spring of 2014 through March 2015, Petitioner was involved in a methamphetamine distribution conspiracy in the Eastern District of Tennessee, and purchased methamphetamine from a co-defendant for both personal use and sale. Several of Petitioner's co-defendants were his customers. On March 3, 2015, Petitioner was driving when his vehicle was stopped by police, and three pounds of methamphetamine, a loaded firearm, and $78,000 in cash were seized from the vehicle. [*Id*.]. Petitioner admitted that he had planned to distribute the methamphetamine, and possessed the firearm to protect himself, his drugs, and his money. [*Id*. at 3-4]. Throughout the conspiracy, Petitioner financed the purchase of, and sold, at least 200 pounds of methamphetamine. [*Id*. at 4].

The plea agreement noted that this factual basis was submitted for purposes of Petitioner's guilty plea, and did not necessarily constitute all the facts in the case. [*Id*. at 3]. The plea agreement stated that "[b]oth the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case." [*Id*.]. Within the same paragraph as the factual proffer, the plea agreement stated:

> Based on his personal involvement and role in this conspiracy, the defendant agrees to be held responsible for a base offense level of 38. Both parties agree that Guidelines Section 2D1.1(b)(1), which is the gun enhancement,

applies in this case and both parties agree that Guidelines Section 3B1.1, which provides for a leadership enhancement, does not apply in this case.

[*Id*. at 4]. The plea agreement further stated that the parties agreed that the appropriate disposition would include "any lawful term(s) of imprisonment[.]" [*Id*. at 4-5]. Moreover, the plea agreement stated:

> No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

[*Id*. at 5].

The plea agreement contained an appeal waiver, in which the Petitioner waived his right to appeal his convictions or sentences unless the sentence imposed exceeded the sentencing guideline range determined by the Court or was above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. [*Id*. at 8-9]. Further, Petitioner waived his right to file a § 2255 motion, unless based on prosecutorial misconduct or ineffective assistance of counsel. [*Id*. at 9].

The presentence investigation report ("PSR") reiterated that, in the plea agreement, Petitioner agreed to be held responsible for a base offense level of 38, agreed that § 2D1.1(b)(1), the gun enhancement, applied, and agreed that the leadership enhancement

under § 3B1.1 did not apply. [PSR ¶ 21]. The PSR concluded that, under U.S.S.G. § 2S1.1, the base offense level for an offense under 18 U.S.C. § 1956(h) was the base offense level for the underlying offense from which the laundered funds were derived. [*Id.* ¶ 47]. The PSR concluded that Petitioner was accountable for 200 pounds (90.72 kilograms) of methamphetamine, which results in a base offense level of 38, pursuant to § 2D1.1(c)(1). The PSR then stated "[t]wo points are added as the defendant possessed a firearm, pursuant to USSG §2D1.1(b)(1), for a total base offense level of 40." [*Id.*]. To this offense level of 40, the PSR added two levels under § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956. [*Id.* ¶ 48]. Thereafter, the PSR added two levels under § 3C1.2 for obstruction of justice. [*Id.* ¶ 51].

Thus, the PSR calculated an adjusted offense level of 44. [*Id.* ¶ 52]. The PSR then subtracted three levels under § 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 41. [*Id.* ¶¶ 54-56]. The PSR calculated Petitioner's criminal history score as four, resulting in a criminal history category of III. [*Id.* ¶ 74]. Based on an offense level of 41 and criminal history category III, the Petitioner's advisory guideline range was 360 months to life. [*Id.* ¶ 96]. In discussing the impact of Petitioner's plea agreement, the PSR noted that the plea agreement included the dismissal of charges or agreement not to pursue potential charges, pursuant to Rule 11(c)(1)(A), and Petitioner was benefitting by the dismissal of Count 6, which would otherwise have subjected him to five years' imprisonment consecutive to any other sentence. [*Id.* ¶ 97].

The government filed a notice of no objections to the PSR. [Crim. Doc. 466]. Petitioner, through then-counsel Scott Lanzon, filed objections to the PSR. [Crim. Doc.

469]. Of relevance, Petitioner objected to the adjustment for obstruction of justice, arguing that note 5(d) to U.S.S.G. § 3C1.1 indicated that avoiding or fleeing from arrest ordinarily was not sufficient ground for the adjustment. Likewise, Petitioner asserted that the government was aware of the conduct that served as the basis for this adjustment at the time of the plea agreement, and specifically did not include those allegations in the plea agreement. [*Id*.].

The government filed a downward departure motion pursuant to U.S.S.G. § 5K1.1. [Crim. Doc. 499]. The government noted that, according to the PSR, Petitioner's guideline range was 360 months to life imprisonment. [*Id*. at 3]. The government recommended a 30% reduction below the bottom of Petitioner's guideline range, for a total term of imprisonment of 252 months. [*Id*.]. After the filing of the § 5K1.1 motion, Mr. Lanzon, filed a motion stating that Petitioner had affirmatively relieved him of his services. [Crim. Doc. 529]. Thereafter, Petitioner, through newly-retained counsel Troy Bowlin, filed a motion requesting that the court substitute Mr. Bowlin for Mr. Lanzon. [Crim. Doc. 531]. The court granted the motions. [Crim. Doc. 557].

In an addendum to the PSR, the probation officer responded to Petitioner's objections. [Crim. Doc. 601]. As to the obstruction of justice enhancement, the probation officer stated that, while Petitioner was correct that Application Note 5(D) to U.S.S.G. § 3C1.1 states that fleeing is ordinarily insufficient, that note "goes on to say, 'See, however, §3C1.2 (Reckless Endangerment During Flight),' and this is the guideline that was used for the enhancement." [*Id*. at 1].

Petitioner, through Mr. Bowlin, then filed a motion for a downward departure or variance from the Sentencing Guidelines. [Crim. Doc. 608]. Petitioner noted that, before signing the plea agreement, he met with Mr. Lanzon, who explained that Petitioner's base offense level would be 38 before the 2-level gun enhancement. [*Id*. at 1]. Petitioner also understood from Mr. Lanzon that he would receive a three-level reduction for acceptance of responsibility. [*Id*.]. Petitioner stated that he relied on this representation in accepting the guilty plea. [*Id*. at 2]. However, the PSR placed him at an adjusted offense level of 44, and the difference between this and the plea agreement's represented adjusted offense level of 40 was over 100 months difference, considering the government's § 5K1.1 motion. Specifically, Petitioner asserted that, if his adjusted offense level was 40 "per the plea agreement," combined with a 3-level reduction for acceptance of responsibility, his total offense level of 37 would result in a sentencing range of 262 to 327 months. However, with the total offense level of 41, his range was 360 to life, resulting in a 102-month increase from the low-end of the sentencing range. [*Id*.].

Petitioner stated that he did not enter into his plea agreement with the understanding that he was facing a 360-month-to-life sentence. [*Id*.]. Petitioner asserted that he waived his constitutional rights and pled guilty as consideration for the government's promise to recommend a base offense level of 38 before the 2-level gun enhancement and any reductions. [*Id*. at 3]. Therefore, Petitioner asserted, fundamental fairness required the government to fulfill the terms of the plea agreement and sentence him at the plea agreement's recommended base offense level prior to any § 5K1.1 decrease. Petitioner also argued that, pursuant to Rule 11(c)(1)(C), the court was bound by the terms of the plea

agreement and was required to hold Petitioner responsible for an adjusted offense level of

40. [*Id*.]. Petitioner, through Mr. Bowlin, filed a memorandum in support of this motion,

further outlining the legal basis for his arguments. [Crim. Doc. 609].

The court ordered the government to respond to Petitioner's motion for a downward

departure or variance. [Crim. Doc. 610]. Before the government responded, Petitioner's

counsel filed a supplement to his motion for a downward departure or variance, stating

that, based on Mr. Lanzon's representation, Petitioner formed an understanding and relied

on that understanding in forming a desire to execute the plea agreement. [Crim. Doc. 620

at 1].[2] In the supplement, Mr. Bowlin stated that "Mr. Pieratt strikes any suggestion that

the United States has breached the plea agreement." [*Id*. at 2].

Documents submitted by the government, with its response to the instant § 2255

motion, indicate that, before Mr. Bowlin filed the supplement, Assistant United States

Attorney Kelly Norris e-mailed Mr. Bowlin, informing him that the government strongly

objected to the suggestion that it had breached the plea agreement, and that, if Mr. Bowlin

intended to pursue the motion, the government would oppose it. [Doc. 8-1 at 2-3]. Ms.

Norris informed Mr. Bowlin that she hoped he "might consider withdrawing [the] motion

as it relates to contract law and the government's alleged violation of the plea agreement

(which is not accurate)." [*Id*. at 3]. Mr. Bowlin responded that he would file a supplement,

highlighting that Petitioner had relied on his prior counsel's representations, and requesting

that the government not oppose the motion based on the supplement. [*Id*. at 1]. Ms. Norris

---

[2] The proposed sealed motion was filed on August 11, 2016, as Criminal Document 612, prior to the government's response, filed on August 28, 2016, as Criminal Document 617.

responded that, if the supplement specifically retracted any arguments that the government was in violation of the plea agreement, she would not oppose the motion. [*Id*.]. Thereafter, Mr. Bowlin e-mailed Ms. Norris the proposed supplement, stating that he would also be willing to include language asking the court to strike any reference to the government breaching the plea agreement. [Doc. 8-2 at 1-2]. Ms. Norris responded with a list of requested changes to the supplement. [*Id*. at 1].

On the record, the government responded to the supplement, stating that it believed that, through the supplement, Petitioner had rescinded any argument raised regarding contract law and an alleged violation of the plea agreement. [Crim. Doc. 617 at 1]. Nonetheless, the government stated that there were no violations of the plea agreement or contract law. [*Id*. at 1-2]. Additionally, the government noted that it was not privy to, and had no information regarding, Petitioner's discussions with Mr. Lanzon, and therefore, it left the issue as to whether Petitioner's misunderstandings deserve leniency to the court's discretion. [*Id*. at 3].

At sentencing, the Court asked Mr. Bowlin whether he wished to pursue the objections to the PSR that Mr. Lanzon had previously filed, and Mr. Bowlin stated that he was not pursuing those objections. [Crim. Doc. 644 at 4]. Thus, the Court accepted the PSR without objection. [*Id*. at 5]. The Court concluded that the appropriate offense level, after adjusting for acceptance of responsibility, was 41, and Petitioner's criminal history category was III, resulting in an advisory guideline range of 360 months to life. [*Id*.].

After the Court granted the government's motion for a downward departure, Mr. Bowlin argued in favor of defendant's motion for a downward departure. [*Id*. at 6-7].

Mr. Bowlin stated that the communication between Mr. Lanzon and Petitioner resulted in the execution of the agreement, and Petitioner understood that his adjusted offense level, with the two-level gun enhancement, would be 40, and he would receive a three-level reduction for acceptance of responsibility. [*Id*. at 7-8]. Mr. Bowlin stated, however, that he was "not suggesting that the United States Attorney's Office has breached [the] plea agreement." [*Id*. at 7]. Mr. Bowlin concluded by requesting that the Court sentence Petitioner based on an offense level of 37, before the downward departure for substantial assistance. [*Id*. at 9]. The government responded that, while it was unfortunate if Petitioner's prior counsel failed to inform Petitioner about the guideline range he would be facing, it was common to add two levels for money laundering, and it was not the government's responsibility to address every possible guideline enhancement in the plea agreement. [*Id*. at 11].

The court concluded that the appropriate offense level was 41. [*Id*. at 13]. The court noted that Petitioner had argued that the plea agreement was pursuant to Rule 11(c)(1)(C), but the court found that it was not a Rule 11(c)(1)(C) agreement, and it was silent as to any enhancements for reckless endangerment or money laundering. The court stated that the government was not a party to any discussions between Petitioner and his prior attorney, and therefore, the government could not be held responsible for Petitioner's misunderstanding. [*Id*.]. The court denied the Petitioner's motion for a downward departure, and sentenced him to 240 months' imprisonment. [*Id*. at 16]. The court again noted that the plea agreement was not a Rule 11(c)(1)(C) agreement, and stated that, regardless of what representations Petitioner's prior counsel made to him, those

representations were not contained in the plea agreement and the court was not bound by them.  [*Id*. at 16-17].

After judgment was entered, Petitioner filed a *pro se* notice of appeal.  [Crim. Doc. 629].  Petitioner later voluntarily dismissed his appeal.  [Sixth Cir. Docket, case no. 16-6580, doc. 7; Crim. Doc. 634].  Thereafter, Petitioner filed the instant § 2255 motion through counsel.  [Crim. Docs. 639, 641].

## II.    STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings.  *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that

applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III.    ANALYSIS

#### A. Prosecutorial Misconduct

In Claim 1, Petitioner asserts a claim of prosecutorial misconduct, alleging that the government breached the plea agreement.  [Doc. 1 at 4].  He states that the government promised that his entire criminal conduct, including all applicable enhancements and reductions, would be summarily classified as an offense level of 37 under the Guidelines. Nonetheless, Petitioner states that the government abandoned its promise and adopted the PSR's recommended offense level of 41.  [*Id*.].

In his memorandum in support, Petitioner asserts that the parties to the plea agreement intended that the total level of his offense would be 37, with a resulting sentence range of 262 to 327 months' imprisonment, and, with the government's additional reduction for cooperation, his negotiated sentence range was 183.4 to 228.9 months' imprisonment.  [Doc. 2 at 14].  Petitioner states that, because he performed his contractual duties under the plea agreement, he was entitled to have his sentence determined based on the method set forth in the plea agreement, and the government breached the agreement by expressly requesting the court to sentence Petitioner to a term of imprisonment based on the PSR's recommendations.  [*Id*. at 15].  Petitioner states that he had a reasonable and justifiable belief that the plea agreement was the parties' complete and final arrangement regarding his criminal liability.  [*Id*. at 17].  Thus, Petitioner argues, if the government had intended to apply an obstruction of justice enhancement, or any additional enhancements, it should have given Petitioner adequate notice by arranging for the application of those

enhancements in the plea agreement. [*Id*. at 20]. Petitioner asserts that specific performance of the plea agreement is the only adequate remedy. [*Id*. at 21].

The government responds that it did not breach the plea agreement, because the plea agreement did not guarantee any particular offense level or guideline range. [Doc. 8 at 9]. The government states that, while the plea agreement included an agreement on the enhancements for possession of a firearm and a leadership role, it did not purport to specify either a specific guideline range or a specific sentence. [*Id*. at 10]. The government asserts that the plain language of the plea agreement made clear that the court had discretion to impose any lawful sentence, would not decide the sentence until after the PSR was prepared, and the sentence would be based on the entire scope of Petitioner's criminal conduct. [*Id*. at 10-11]. The government also notes that this claim is procedurally defaulted. [*Id*. at 11].

To the extent that Petitioner is attempting to raise a new stand-alone challenge with respect to alleged prosecutorial misconduct, such claims have been procedurally defaulted by his failure to raise them on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998). A petitioner who procedurally defaults a claim and raises it for the first time on collateral review must show either that (1) he had good cause for not raising it earlier and would suffer "actual prejudice" if it were not reviewed, or (2) he is actually innocent. *Id*. at 622. Petitioner's claims of prosecutorial misconduct are procedurally defaulted because such claims could have been raised on direct appeal, but were not. Petitioner has not attempted to demonstrate cause and prejudice to excuse his procedural default or that he is actually innocent.

Nonetheless, a review of the plea agreement does not accord with Petitioner's representation as to its contents. Although the plea agreement states that the parties agreed that Petitioner's base offense level would be 38, a gun enhancement would apply, and a leadership role enhancement would not apply, it did not address any other potential enhancements, a total offense level, or a guideline range that would apply. [Crim. Doc. 284 at 4]. The plea agreement also includes a provision in which Petitioner acknowledged: (1) that his sentence would be determined by this Court after it received the PSR and information from the parties; and (2) that the determination would be based upon the entire scope of his criminal conduct, his criminal history, and other factors and guidelines as provided by federal sentencing laws. [*Id*. at 5]. Finally, the plea agreement stated that it "constitute[s] the full and complete agreement and understanding between the parties concerning the defendant's guilty plea . . . and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." [*Id*. at 11].

Regardless of Petitioner's understanding of the plea agreement, based on his prior counsel's representations, Petitioner cannot show that the government actually breached the plea agreement. The plain language of the plea agreement indicates only that Petitioner and the government had reached an agreement on: (1) the applicable base offense level under the drug Guidelines; (2) the applicability of a gun enhancement; and (3) the applicability of a leadership role enhancement. The plea agreement addressed no other possible guideline enhancements, did not provide for a specific sentence or guideline range, and specifically informed the Petitioner that his sentence would be calculated by the Court after the PSR was created.

Although Petitioner cites the complete agreement clause of the plea agreement in support of his argument that, if the government intended to apply other enhancements, it should have addressed them in the plea agreement, this clause supports the opposite conclusion. The complete agreement clause of the plea agreement indicates that there was no agreement as to anything, including additional guideline enhancements, not specifically addressed in the body of the plea agreement. Thus, because the additional guideline enhancements that were ultimately applied were not addressed in the plea agreement, there was no agreement between the parties as to those enhancements, and the government did not breach the plea agreement in recommending a sentence based on the PSR's guideline range. Accordingly, Petitioner is not entitled to relief as to this claim.

## B. Ineffective Assistance of Counsel

In Claim 2, Petitioner asserts that his second counsel, Mr. Bowlin, was ineffective in advising him not to withdraw his guilty plea, after he learned that the government intended to breach the plea agreement. [Doc. 1 at 5]. Petitioner states that Mr. Bowlin convinced him that he would be able to enforce the plea agreement, and Petitioner would receive a prison term of no longer than 183 months. Petitioner further states that although Mr. Bowlin filed a motion with the court arguing that the plea agreement was binding, he later supplemented that motion, without Petitioner's consent, and withdrew any argument regarding the government's breach of the plea agreement. Petitioner further states that Mr. Bowlin failed to object to the court's improper following of Fed. R. Crim. P. 11. [*Id*.].

In his memorandum in support, Petitioner asserts that Mr. Bowlin submitted the supplement to his motion for a downward departure without Petitioner's permission and

knowledge, and actually submitted the supplement to the Assistant U.S. Attorney for review and approval before filing it. [Doc. 2 at 23-24]. Additionally, Petitioner asserts that Mr. Bowlin was ineffective in failing to request that the court either determine Petitioner's sentence in accordance with the terms of the plea agreement, or allow Petitioner to withdraw the plea. [*Id*. at 27]. Petitioner bases this argument on his assertion that the plea agreement was pursuant to Fed. R. Crim. P. 11(c)(1)(C). [*Id*. at 27-29]. Petitioner asserts that, but for Mr. Bowlin's advice, he would have exercised his right to withdraw his guilty plea, following the government's breach. [*Id*. at 29-31].

The government responds that Petitioner's counsel was not ineffective in failing to object to a non-existent error, emphasizing again that it did not breach the plea agreement. [Doc. 8 at 13]. The government acknowledges that, if Mr. Bowlin misapprehended the terms of the plea agreement and thus misadvised Petitioner about the circumstances under which he might be able to withdraw his plea, such performance may have been deficient. [*Id*. at 14]. Nonetheless, the government contends that Petitioner has not shown that he misunderstood the plain terms of the plea agreement before pleading guilty. [*Id*.].

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

1. <u>Withdrawing Breach of Plea Agreement Arguments</u>

To the extent that Petitioner asserts that Mr. Bowlin was ineffective in withdrawing Petitioner's arguments regarding the government's breach of the plea agreement in his downward departure motion, without Petitioner's knowledge of consent, the Court agrees

that such conduct could constitute deficient performance.  The Court particularly finds

Mr. Bowlin's filing of the supplement, which withdrew all arguments regarding the breach

of the plea agreement, after having been instructed to do so by the government, and indeed,

after submitting the supplement to the government for approval before filing it with the

Court, problematic.  [*See* doc. 8-1].  Mr. Bowlin's duty was to his client, the Petitioner, not

to the government, and the Court does not condone Mr. Bowlin's e-mail exchange with the

government, in which Mr. Bowlin agreed to retract his allegations that the government had

breached the plea agreement, apparently without Petitioner's consent.  Nonetheless, even

though counsel's performance may have been deficient, Petitioner cannot show prejudice,

because, as discussed above, the government did not breach the plea agreement.  Counsel

cannot be ineffective in failing to raise a meritless argument.  *Greer v. Mitchell*, 264 F.3d

663, 676 (6th Cir. 2001).  Moreover, because the government did not breach the plea

agreement, Petitioner cannot show a reasonable probability that the outcome of his case

would have been different, had counsel raised this issue.  Thus, this claim fails.

2.  Advice Not to Withdraw Guilty Plea

Additionally, to the extent that Petitioner asserts that Mr. Bowlin was ineffective in

convincing him not to withdraw his guilty plea when it became clear that the government

intended to "breach" the plea agreement, Petitioner again cannot show prejudice.  Even if

Mr. Bowlin had not advised Petitioner against attempting to withdraw his plea, and

Petitioner did in fact attempt to withdraw his plea, Petitioner cannot show that the Court

would have allowed him to withdraw the plea.  Petitioner's plea agreement specifically

stated that "[a]ny estimates or predictions . . . regarding any potential sentence in this case

are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s)."  [Crim. Doc. 284 at 5].

A defendant may withdraw a guilty plea before sentence if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Civ. P. 11(d)(2)(B).  In the Sixth Circuit, a multi-factor balancing test applies in deciding whether to grant a motion to withdraw a guilty plea.  *United States v. Haywood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The factors to be considered include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id*. (citing *United States v. Bashara*, 27 F. 3d 1174, 1181 (6th Cir. 1994)).  "Plea withdrawals should generally not be allowed where a defendant has made a tactical decision to enter a plea, waited several weeks, and then believes he made a bad choice in pleading guilty."  *Id*. at 1052-53 (internal quotation marks and alterations omitted).

Here, Petitioner has not shown a reasonable probability that, had he moved to withdraw his guilty plea based on the government's "breach" of the plea agreement, the Court would have granted such motion.  First, over four months elapsed between the time when Petitioner entered into his plea agreement, and Mr. Bowlin made his first appearance on Petitioner's behalf.  [*See* Crim. Docs. 284, 558].  Second, Petitioner has not shown a valid reason for his failure to move to withdraw his plea at an earlier date.  To the contrary,

after receiving the PSR, while represented by Mr. Lanzon, Petitioner became aware of the additional Guideline enhancements, and, with his counsel, appears to have made the decision to object to these additional enhancements, rather than move for withdrawal of his guilty plea. [*See* Crim. Doc. 469]. Third, Petitioner had not maintained his innocence, nor was his reason for seeking withdrawal of his plea based on his innocence. As to the fifth and sixth factors, nothing in Petitioner's background indicated any reason that he could not have made an informed and intelligent decision to plead guilty, and, as his criminal history category makes clear, Petitioner had a significant past with the criminal justice system. As to the seventh factor, the government would have been prejudiced by Petitioner's withdrawal of his guilty plea, particularly after Petitioner had cooperated with law enforcement regarding the cases against his co-defendants.

The only factor in Petitioner's favor for withdrawal of his guilty plea would have been the circumstances underlying the guilty plea, as Petitioner likely would have asserted, as he asserts now, that Mr. Lanzon misled him about the meaning of the plea agreement. However, as discussed further above, the plain language of the plea agreement belies the understanding Petitioner alleges Mr. Lanzon provided him. Thus, this factor alone is insufficient to indicate any reasonable probability that the court would have allowed Petitioner to withdraw his guilty plea. Because he has not shown a reasonable probability that the outcome would have been different, had Mr. Bowlin not advised him against seeking to withdraw his guilty plea, Petitioner cannot show prejudice, and therefore, this claim fails.

### 3. Failure to Object to Procedures at Sentencing

Finally, to the extent that Petitioner asserts that Mr. Bowlin was ineffective in failing to object to the Court's failure to provide Petitioner with an opportunity to withdraw his plea, Petitioner bases this argument on the assumption that his plea agreement was pursuant to Rule 11(c)(1)(C), and therefore, the Court was required to allow Petitioner to withdraw his plea, if it did not accept the sentence recommendation in the plea agreement. However, as this Court previously noted at the sentencing hearing, Petitioner's plea agreement was not pursuant to Rule 11(c)(1)(C), and instead, was pursuant to Rule 11(c)(1)(A) and (B).

Rule 11(c)(1)(A) applies when the government specifies in the plea agreement that it will not bring, or will move to dismiss other charges. Fed. R. Civ. P. 11(c)(1)(A). Rule 11(c)(1)(B) applies with the government specifies in the plea agreement that it will recommend, or agree not to oppose, a particular sentence or sentencing range is appropriate, or that a particular provision of the Guidelines does or does not apply. Fed. R. Civ. P. 11(c)(1)(B). In this case, the recommendation or request is not binding on the Court. *Id*. Rule 11(c)(1)(C) applies when the government agrees in the plea agreement that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Guidelines does or does not apply. Fed. R. Civ. P. 11(c)(1)(C). Such a recommendation is binding on the court, once it accepts the plea agreement. *Id*.

Here, the text of the plea agreement does not state whether it falls under Rule 11(c)(1)(A), (c)(1)(B), or (c)(1)(C). However, the language contained in the plea agreement makes clear that the plea agreement is not a Rule 11(c)(1)(C) agreement.

Specifically, the plea agreement states that the court may impose *any* lawful term of imprisonment, that no predictions regarding any potential sentence are binding on the court, and that the court will determine the sentence based on the entire scope of the defendant's criminal conduct, after reviewing the PSR. [Crim. Doc. 284 at 5]. Such language makes clear that the parties did not intend any recommendation regarding the guideline calculation to be binding on the Court, and therefore, did not intend to create a Rule 11(c)(1)(C) plea agreement. Because the plea agreement was not a Rule 11(c)(1)(C) agreement, and therefore not binding on the court, the court did not err in failing to give Petitioner an opportunity to withdraw his guilty plea. Counsel was not ineffective in failing to object to this, as there was no error, and counsel is not ineffective in failing to raise meritless arguments. *See Greer*, 264 F.3d at 676.

Accordingly, Petitioner has not shown that Mr. Bowlin was ineffective in failing to object to the government's "breach" of the plea agreement, advising Petitioner not to withdraw his plea, or failing to object to the Court's failure to give Petitioner an opportunity to withdraw his plea at sentencing.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [doc. 1; crim. doc. 641] will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. A petitioner may appeal a final order denying a § 2255 motion only if he is issued a COA, and a COA should issue only where

the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(a), (c)(1)(B), (c)(2).  When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims.  Because Petitioner has failed to make such a showing, a COA **SHALL NOT ISSUE**.

An order consistent with this opinion will be entered.


    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE